### DAVID L. GALLUP ET AL. v. H. D. THACKER.

Decided May 5, 1910.

**1.—Public Land—Homestead Preemption—Occupancy.**

There is nothing in the Act of August 12, 1870, concerning the preemption of public land for homestead purposes, prescribing the character of improvements which must be made by the preemptor or requiring that the land should be cultivated or put to any particular use. Evidence as to occupancy of land preempted under said Act considered, and held to be a sufficient compliance with the requirements of the Act in that respect.

**2.—Same—Abandonment.**

A preemptor of public land under the homestead donation Act of 1870, complied with all the preliminary requirements and occupied the land from May, 1873, to December, 1876, when he moved off the land and went to West Texas where he remained until 1898; during his absence the land was unoccupied by any one; prior to September, 1882, affidavits were filed in the Land Office to the effect that the preemptor had abandoned his homestead donation, and on the last-named date patent was issued by the State to another party for the land which had been filed on and occupied by the preemptor; in January, 1907, the preemptor for the first time filed in the Land Office the affidavits of his occupancy from 1873 to 1876, and demanded a patent, which the Commissioners of the Land Office refused. Held, compliance with the preliminary steps required by the statute and the three years' occupancy did not vest the preemptor with an indefeasible title; to preserve his right it was necessary that he either remain on the land or comply with the other requirements of the law and secure a patent.

Appeal from the District Court of San Augustine County. Tried below before Hon. W. B. Powell.

*Terry, Cavin & Mills,* for appellant.—The undisputed evidence in this case showing that appellee left the land in controversy and left San Augustine County in December, 1876, together with all his family, and moved to West Texas, and that he never until January, 1907, filed in the General Land Office of the State of Texas his proof of three years' occupancy of said land, and further showing that the land was purchased in good faith from the State in 1882, and that appellants and those under whom they claim had no notice that the land was claimed by any one as a homestead, or that the three years' occupancy had been completed, and there being no evidence upon the land itself

to show that said occupancy had ever been completed, the title of appellants, holding under the Blount patent, is superior to appellee's claim as a pre-emptor, and the court erred in rendering judgment against appellant's title. Act of August 12, 1870, Sayles' Early Laws, art. 3456, 6 Gammel's Reprint of the Laws of Texas, p. 242; Act of May 16, 1871, Sayles' Early Laws, art. 3586, 6 Gammel's Reprint of the Laws of Texas, 995; Act of May 26, 1873, Sayles' Early Laws, art. 3774, 7 Gammel's Reprint, 553; Wood v. Collins, 60 Fed., 141; Jennings v. De Cordova, 20 Texas, 514; Kinsey v. Sasse, 3 Texas Civ. App., 216; Taylor v. Criswell, 4 Texas Civ. App., 106; Teel v. Huffman, 21 Texas, 782; Fowler v. Allred, 24 Texas, 185; Kohlhass v. Linney, 26 Texas, 334; Lewis v. Mixon, 11 Texas, 568; Cravens v. Brooke, 17 Texas, 269.

The undisputed evidence showing that appellee and his family left the land in question and left San Augustine County in 1876, and moved to West Texas where they continued to reside for twenty-two years, and that no one representing them resided upon the land after their departure in 1876, and the evidence further showing that the land was patented to S. W. Blount, Sr., by the State of Texas in 1882, and that appellants, who hold the Blount title, and those under whom they claim, held the Blount title without actual knowledge of the three years' occupancy by appellee at the time of the purchase by appellants and those under whom they claim, and no proof of the three years' occupancy having been filed by appellee or any one representing him until twenty-five years after the land had been patented to Blount, the location and homestead claim of appellee to the eighty acres in question is rendered null and void by article 4171 of the Revised Statutes. Rev. Stats., art. 4171; Snider v. Methvin, 60 Texas, 487; Hamilton v. Avery, 20 Texas, 634; Yocham v. McCurdy, 95 Texas, 336; Frisbie v. Whitney, 76 U. S., 187; Campbell v. Wade, 132 U. S., 37; Bower v. Higbee, 9 Mo., 259; Phelps v. Kellogg, 15 Ill., 135; Meyer on Vested Rights, pars. 204, 210.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by the appellants against the appellee to recover the title and possession of a tract of 140¾ acres of land in San Augustine County, patented by the State of Texas to S. W. Blount.

The appellee, defendant in the court below, disclaimed as to all of the land sued for except a tract of eighty acres thereof, which he described by metes and bounds, and as to which he pleaded not guilty, and by cross-action prayed for recovery of title thereto against appellants.

The case was tried in the court below without a jury, and judgment rendered in favor of defendant for the 80 acres claimed by him, and for plaintiffs for the balance of the 140¾ acres.

At the request of appellants the trial court filed conclusions of fact and law, which are as follows:

"1. I find that defendant, H. D. Thacker, resided in San Augustine County, Texas, in May, 1873, and that he was a single man, over twenty-one years of age and owned no land at that time and had no homestead.

"2. I find that he made application under the Homestead Donation Act of August 12, 1870, for a survey of 80 acres of land of the public domain in San Augustine County, Texas, and that he made his affidavit on the 12th day of June, 1873, of settlement and application to the county surveyor of San Augustine County for a survey of 80 acres of land, which affidavit of settlement and application were in all respects as provided by law, and that the same were duly filed and recorded in San Augustine County, Texas.

"3. I find that on the 12th day of October, 1873, the surveyor of San Augustine County, W. N. Whitton, surveyed the 80 acres of land for the defendant Thacker, the same described in his answer, and the field notes thereof were duly filed and recorded in the surveyor's office of San Augustine County between the 12th day of October and the 1st day of November, 1873, and that the original field notes, application for survey and affidavit of settlement were returned to and duly filed in the Land Office at Austin, Texas, and I find that the same are now of record in the county of San Augustine, and also on file and of record in the Land Office at Austin. I find that said land was subject to appropriation by the defendant, and that defendant paid all fees required by law.

"4. I find that defendant Thacker settled upon said land in May, 1873, built him a house thereon, and in good faith resided upon and occupied the same until December, 1876, continuously, making the same his home; that in December, 1876, he moved off of said land and went to West Texas, and remained there until some time in the year 1898. During the time he was away no one lived upon said land, nor did he hear anything about the land except one time during his absence; that upon his return he made proof of occupancy and filed same in the General Land Office on the 21st day of January, 1907.

"5. I find that the H. D. Thacker survey of 80 acres as made for him was delineated and plotted on the map of San Augustine County in the General Office of Texas in 1873, in the name of H. D. Thacker, and remained thereon until supplanted by a survey made for S. W. Blount, containing 140 acres, which included the Thacker 80 acres.

"6. I find under Act approved July 14, 1879, a survey of 140¾ acres of land was made for S. W. Blount, Sr., and that said survey included the 80 acres heretofore surveyed for said Thacker, and that said 140 acres of land was duly patented to said S. W. Blount on September 9, 1882, and said patent is duly recorded in San Augustine County, Texas, and I find that plaintiffs have acquired a title of Blount by mesne conveyances down to themselves.

"7. I find that Chas. Flournoy and two other persons made an affidavit that said Thacker had abandoned his homestead donation, and that the same is on file in the General Land Office at Austin, and that the Commissioners of the General Land Office refused to issue patent to said Thacker for his 80-acre homestead donation because the same was covered by patent issued to said Blount for said 140 acres, dated September 9, 1882.

"8. I find that the plaintiffs paid a valuable consideration for the land under the Blount title, but that they had notice of the survey

made for said Thacker by reason of the records of surveyor's office of San Augustine County and of the General Land Office of Texas.

"I conclude as a matter of law that the application, survey and return of field notes of H. D. Thacker of the 80 acres of land, segregated it from the public domain of Texas, and that it was not subject to sale by the State when Blount purchased the same.

"I conclude that the three years' occupancy by said Thacker of the 80 acres of land gave him indefeasible title thereto, and his leaving and moving away from the land was not an act of abandonment, and that the affidavit of abandonment could not be made after the three years' occupancy was complete, the title being indefeasible and perfect at that time."

None of the findings of fact are assailed by appellant except that portion of the fourth in which it is stated that the appellee resided upon and occupied the 80 acres of land in controversy continuously from May, 1873, to December, 1876.

This finding is attacked under the seventh assignment of error upon the ground that the occupancy of the land by appellee, as shown by the undisputed evidence, was not such as was contemplated by the letter or spirit of the homestead donation laws under which he claimed. The evidence upon this issue shows that appellee built a small one-room log house on the land in May, 1873, and that he kept a bed and cooking utensils in this house and slept there most of the time. He also built a shed in which he kept his horse. He rented land for farming purposes from a Mr. Hunt who lived near him, and never placed any of the 80 acres in cultivation. In 1875 he married a daughter of Mr. Hunt, and he testified that after his marriage he took his wife to his house on the land in controversy. He did not sleep in his house all of the time either before or after his marriage, and often ate and slept at Mr. Hunt's and other places in the neighborhood. On cross-examination he stated that he might have slept in his house half of the time, or he might not. He had no other property, and claimed no other home than the 80 acres with its log hut and horse shed. During the fall of 1875 he and his wife were absent from the place for two months on a trip to Freestone County, where he went to take a herd of cattle. When he left on this trip he left his bed and cooking utensils in his house, and upon his return from Freestone County he resumed his occupancy of the premises, and, as before stated, remained there until December, 1876.

We think this evidence supports the finding of the court complained of, and the assignment can not be sustained. There is nothing in the statute under which the appellee claims prescribing the character of improvements that must be made by the pre-emptor or requiring that the land sought to be acquired should be cultivated or put to any special use. All that is required is that it must be surveyed and be occupied and improved for three years. Act August 12, 1870; Gammel's Laws, vol. 6, page 242.

We think the evidence shows a sufficient compliance with the requirements of the statute as to occupancy to have vested title in appellee if all the other requirements of the statute were complied with. It is well settled that the occupancy of the land shown by appellee

would be held sufficient under the statutes giving an "actual settler" on public land a preference right to purchase, and it seems to be equally well settled that the character of occupancy or settlement required is the same under the homestead donation Acts as under the Acts giving a preference right to purchase to the "actual settler." Corrigan v. Fitzsimmons, 51 Texas Civ. App., 444 (111 S. W., 793); Borchers v. Mead, 17 Texas Civ. App., 32; Burleson v. Durham, 46 Texas, 152; Busk v. Lowrie, 86 Texas, 128; Atkeson v. Bilger, 4 Texas Civ. App., 99 (23 S. W., 415).

The evidence shows that the affidavit of Flournoy and others as to the abandonment of his claim by the appellee, referred to in the sixth conclusion of facts before set out, was filed in the Land Office before the issuance of the patent to Blount. The undisputed evidence further shows that the agent of the East Texas Land Company, the immediate vendor of appellants, purchased the land from S. W. Blount for a valuable consideration and without any actual notice that appellee had ever lived on or asserted any claim thereto.

Under appropriate assignments of error appellant assails the trial court's conclusion of law that the application, survey and occupancy of the land by the appellee for three years gave him an indefeasible title thereto as against appellants, notwithstanding the fact that he failed to make proof of such occupancy before his abandonment of the land, and the further fact that appellants' title was acquired before such proof was made and without actual knowledge of the prior occupancy and claim of appellee.

The majority of the court are of the opinion that this conclusion of the trial court should be sustained on the ground that the proof of occupancy, under the statute under which appellee claims, was not required to complete the title of the pre-emptor, but was only necessary for the purpose of enabling him to procure the issuance of a patent from the State; and the issuance of the patent was not necessary to render the title acquired by such occupancy indefeasible.

The writer can not assent to this holding. While it is true that the issuance of the patent was not necessary to render appellee's title to the land indefeasible, his title to the land did not become complete until he did all that the statute required him to do to entitle him to have the patent issued, and having abandoned the possession of the land without making the proof which the statute required to entitle him to have the title to the land extended by patent, the right of appellants, which was acquired before the completion of appellee's title, is superior thereto. The Act of August 12, 1870, under which appellee claims, is as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas, That every head of a family who has not a homestead shall be entitled to one hundred and sixty acres of land out of any part of the public domain as a homestead, upon condition that he or she will select, locate and occupy the same for three years, and pay the office fees on the same. And all single men twenty-one years of age shall be entitled to eighty acres of land out of any part of the public domain upon the same terms and conditions as are imposed upon the head of a family.

"Section 2. Any person who shall occupy any portion of the public domain as a homestead under the preceding section, shall have the same

surveyed and the field notes returned to the Land Office within twelve months after settling upon same; and such person shall be entitled to a patent therefor upon filing in the Land Office an affidavit to the effect that such person has occupied and improved said land for three years in good faith, and has complied with the requirements of this Act and paid all fees, and which affidavit shall be corroborated by the affidavits of two disinterested and credible citizens of the county in which the land is situate, and all of which affidavits shall be subscribed and sworn to before the district clerk, who shall certify the same and the credibility of said citizens under his seal of office."

It is well settled that a failure on the part of the pre-emptor to comply with any of the requirements of the statute necessary to complete his title will defeat his claim as against an innocent third party whose rights have intervened. Jennings v. DeCordova, 20 Texas, 514; Teel v. Huffman, 21 Texas, 782. So long as the occupancy of the claimant under the donation Act continues and the title to the land remains in the State, while the claimant's right might become dormant by his delay in complying with some provision of the statute, it could be revived and consummated into a perfect title by a compliance with all of the requirements of the statute at any time before the rights of an innocent third party had intervened, provided a forfeiture of such right had not been declared by the State.

The only question then for our determination is, whether the proof of occupancy required by the statute was necessary to perfect the title in appellee.

The first section of the Act above quoted is a substantial copy of the constitutional provisions giving the right to every head of a family to acquire a homestead of 160 acres out of the public domain, and to every single man a similar right to acquire a homestead of 80 acres. By the terms of this section the only requirement is that the pre-emptor shall select, locate and occupy for three years and pay the office fees. The next section of the Act, however, provides how the selection and location of the land shall be made, and directs that the same shall be surveyed and field notes returned to the Land Office within twelve months. It then provides that such person (pre-emptor) shall be entitled to a patent for the land upon filing in the Land Office an affidavit to the effect that he has occupied and improved the land in good faith for three years, and paid all fees, which affidavit shall be corroborated by the affidavit of two disinterested and credible citizens of the county in which the land is situate. It seems to me that by this requirement the Legislature intended that the title to the land would not become complete until the proof of occupancy was made. If the pre-emptor was not entitled to a patent until he made this proof, it seems to me that he did not have a perfect or indefeasible title.

In the case of Yocham v. McCurdy, 95 Texas, 345, our Supreme Court holds that the provision of the Constitution before mentioned does not confer an absolute right to a homestead donation, but merely makes it the duty of the Legislature to provide means by which homesteads might be acquired from any part of the unappropriated public domain. It follows from this, that the means or method required by

the Legislature must be followed by the pre-emptor to entitle him to acquire title of a homestead donation. I do not think the case of O'Neal v. Manning, 48 Texas, 403, relied on by appellee, is conclusive of the question, because the statute under which the homestead donation claim was made in that case did not require proof of occupancy to be filed by the claimant.

The question has been directly decided in favor of appellants' contention by the Federal Court of Appeals in the case of Wood v. Collins, 60 Fed. Rep., 139. I think the conclusion reached by Judge Pardee in that opinion is sound, and should be followed by our courts.

We are all of opinion that article 4171 of the Revised Statutes does not affect the question, for the reason that if appellee's title had become vested and indefeasible before the passage of the Act contained in said article, such Act could not affect his title; and if, on the contrary, appellee's title was not perfect and indefeasible at the time he abandoned the premises, appellants have acquired title without regard to the provision of this article of the statute.

None of the remaining assignments present any error which would authorize a reversal of the judgment, and each of them is overruled.

The majority of the court being of opinion that the judgment of the court below should be affirmed, it has been so ordered. The writer, for the reasons indicated, is of the opinion that the judgment should be reversed and judgment here rendered for appellants.

### ON MOTION FOR REHEARING.

REESE, ASSOCIATE JUSTICE.—We deem it proper, before passing upon the motion for rehearing in this case, to express more fully the views of the majority of the court upon the particular question upon which the Chief Justice has dissented.

It seems to us that, to speak of the abandonment of his claim by Thacker, is an improper use of the term, and is a begging of the very question at issue. If the application, survey and three years' occupancy gave Thacker full title, then his subsequent removal from the land was no more an abandonment than would be the removal of the owner from land held by any other kind of title.

So much of the Act of August 12, 1870, under which Thacker acquired his right, as is applicable is quoted in the opinion of the Chief Justice.

The first section unqualifiedly provides that any single man twenty-one years of age shall be entitled to a homestead of 80 acres of land out of the unappropriated public domain of the State, upon the condition that he shall select, locate and occupy the same for three years and pay all office fees. If the Act stopped here, to determine the homesteader's right it would only be necessary to determine whether he had done what was thus required of him. But these broad terms are qualified by the provisions of section 2, imposing other conditions upon the acquisition of the right.

What are these additional conditions? Clearly, only that he have the land surveyed and the field notes returned to the General Land Office within twelve months after making his settlement, unless it be

held that the issuance of a patent was essential to his title, and this we understand the dissenting opinion does not hold, but holds the contrary.

Now, if the patent is not essential to a full and indefeasible title, upon what reasoning can it be held that it is essential to such title, under the terms of the Act, that the homesteader make the proof of occupancy which, by the terms of the Act, is required for the purpose alone of entitling him to a patent? The Act, after providing what he shall do to entitle him to the land, then provides what further he shall do to entitle him to the evidence of his title furnished by the patent, which it is conceded is not essential to a full, indefeasible title. Why require the pre-emptor to make and file in the Land Office the affidavit required by section 2 of the Act? The Act says, to entitle him to a patent—not to serve as notice of his right in case he moves off of the land. To hold that it was necessary that appellee, in addition to having the land surveyed, the field notes returned to the Land Office and paying the fee, should also, as a condition of his right, make and file in the Land Office the affidavit prescribed, is to inject into the Act a condition which the Legislature either did not think of or did not consider necessary. To add this condition is, under the guise of judicial interpretation, to do what the Legislature probably should have done, and probably would have done, if they could have foreseen the occurrence of cases like the present, but what, in our judgment, they did not do, and is, not to interpret the statute, but to make one, in order to prevent a loss to an innocent person. Under the provisions of the Act as written, if the homesteader chose to rest his title or right upon the performance of the conditions prescribed, of survey, payment of fees and three years occupancy, without patent, he must, of course, be at all times ready to defend his title with proof of the performance of these conditions. If he desired to be relieved of this burden, then in order to be so relieved he would have to make his proof, once for all, file it in the Land Office and procure the patent. The penalty for not making this proof and procuring the patent was, not to lose his land, but to be prepared to defend his title by making the proof, as was done in this case.

If the Legislature had intended to make the filing of the affidavit in the Land Office essential to the *title or right,* they could not have expressed such intention in a way more calculated to mislead the unwary than was done, and we think it would not have been suggested to appellee in this way by the terms of the Act that he could not safely remove from the land, which he had had surveyed and had occupied for the required length of time, without first filing in the Land Office the affidavit of such occupancy.

Speaking for the majority, we have arrived at our conclusion, sustaining the judgment of the trial court, from an interpretation of the language of the Act, and have not felt authorized to depart therefrom by imputing to the Legislature an intention not to be gathered from the terms of the Act, and, in fact, inconsistent therewith. This conclusion is strengthened by the fact that in the later Act (article 4171, Revised Statutes) it is expressly provided, in unmistakable terms, that a failure to make the proof of occupancy as prescribed, as well as such

failure in other particulars, should work a forfeiture of the right of the homesteader. This provision was incorporated in the Code of 1879 by the revisers, and could not affect the right of appellee, which matured in 1876. But even under this statute no time is fixed within which the proof must be made to avoid a forfeiture.

Neither Blount nor his . vendee can claim ignorance of appellee's claim at the time their respective rights accrued. They deliberately took the chances of his returning and asserting his right. If appellee had remained on the land it would hardly be contended that he had forfeited his right so as to authorize the Land Commissioner to dispose of the land as unappropriated. When he had continued his occupancy as long as the law required, no purpose could be subserved by a continued occupancy, except to give notice of his claim. That was not necessary in this case, for the opposing parties had such notice. After appellee returned in 1907, he made the necessary proof and applied for a patent. The case seems somewhat analogous to that of a man who, having acquired. full title to land by adverse possession under the statute of limitations of ten years, abandons such possession, so that not a trace thereof remains. This is not an abandonment of his right or title, which is not affected to any extent thereby. (Branch v. Baker, 70 Texas, 190.)

·Clearly, the Legislature might have made appellee's right to the land dependent upon his making his proof of occupancy within some prescribed time, but it did not do so. By separating the conditions upon which he could acquire the *land* from the additional conditions upon which he could acquire the *patent* as evidence of his right, we think they expressed the intention that neither the affidavit of occupancy, filed in the Land Office, nor the issuance of the patent, should be necessary to complete his title.

For these reasons, we are of the opinion that the judgment of the trial court is correct, and should be affirmed.

ON MOTION FOR REHEARING.

PLEASANTS, CHIEF JUSTICE.—In accordance with the opinion of the Supreme Court upon the certificate of dissent heretofore filed in this cause, (103 Texas, 310), appellant's motion for rehearing is granted and the judgment of the court below reversed, and judgment here rendered in favor of appellants for all of the land in controversy.

*Reversed and rendered.*